**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2017 MAR 31  P 3: 55

WAYNE H. NORMAN,                                    Civil Action File No.

    Plaintiff,

vs.

SITO MOBILE SOLUTIONS,                   _____

    Defendant.

## ORIGINAL COMPLAINT

NOW COMES the Plaintiff, WAYNE H. NORMAN, by and through himself and for his Complaint against the Defendant, SITO MOBILE SOLUTIONS, states as follows:

## NATURE OF THIS ACTION

1. Plaintiff brings this action for actual and statutory damages arising out of and relating to the conduct of SITO MOBILE SOLUTIONS, (hereinafter, SMS), to include all of its affiliates, subsidiaries, and/or related entities, as well as all persons and entities acting on behalf of SMS, including but not limited to SMS, in

negligently, knowingly, and/or willfully contacting Plaintiff on his cellular

telephone without his prior express consent within the meaning of the TCPA.

2. This is an action for actual and statutory damages for violations of the

Telephone Consumer Protection Act (hereinafter, "TCPA"), 47 U.S.C. section 227

*et seq.*

3. SMS, has violated the TCPA by contacting the Plaintiff on his cellular telephone

via an "automatic dialing system," as defined by 47 U.S.C § 227(a)(1), without

prior express consent within the meaning of the TCPA.

## JURISDICTION & VENUE

4. Jurisdiction arises under the TCPA, pursuant to 28 U.S.C. section 1331.

## PARTIES

5. WAYNE H. NORMAN, (hereinafter, "Plaintiff"), is a natural person who was at

all relevant times residing in the county of Cook, state of Illinois.

6. SITO MOBILE SOLUTIONS, INC., (hereinafter, "Defendant"), is a company

with an address of 100 Town Square Place, Ste 204, Jersey City, NJ 07310, and is

a "person" as defined by 47 U.S.C. section 153(39).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA) 47 U.S.C §227

7. In 1991, Congress enacted the TCPA in response to a growing number of

consumer complaints regarding certain telemarketing practices.

8. The TCPA regulates, inter alia, the use of automated telephone equipment, or "predictive-dialers", defined as equipment which "has the capacity…(a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers.  47 U.S.C. § 227(a)(1).  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

9. Per findings by the Federal Communications Commission (FCC), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

10. The TCPA prohibits the use of automatic telephone dialing systems and the prerecorded messages to call wireless devices.  § 227(b) prohibits… the use of automated telephone equipment;  (1) Prohibitions…"It shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States—…"

## A BRIEF OVERVIEW OF TEXT MESSAGING

11. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

12. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-150 characters.

13. An "SMS message" is a text message call directed to a wireless device using the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

14. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether the message is authorized.

15. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile

phones.  Short codes are generally easier to remember and are utilized by

consumers to subscribe to such services such as television program voting or more

benevolent uses, such as making charitable donations.

16. A short code is sent to consumers along with the actual text message and

conclusively reveals the originator of the SMS message.

17. Text messages are "calls" within the purview of the TCPA.

*See Satterfield v Simon & Schuster, Inc.*, 569 F.3d (9th Cir. 2009).

## **VICARIOUS LIABILITY**

18.  The Federal Communications Commission (FCC) has issued a Declaratory

ruling governing when a company is liable under the Telephone Consumer

Protection Act (TCPA), and FCC telemarketing and autodialing rules, for

violations committed by a third party that the company authorizes to sell its goods

or services but does not directly ask or otherwise engage in telemarketing, by

holding that the company may be vicariously liable under federal common law

principles of agency for TCPA violations that the third party commits.

19.  The declaratory ruling clarifies that such a company, *i.e.*, the "seller" in TCPA

parlance, is not directly liable unless it initiates the non-compliant call, but may be

vicariously liable "under a broad range of agency principles, including not only

formal agency, but also principles of apparent authority and ratification."  The

FCC recognized that a seller can concurrently be a telemarketer and thus be directly liable for non-compliant calls – *e.g.*, when it initiates a call on its own behalf, or when it is intrinsically involved in specific calls by third parties by, *e.g.*, giving them specific and comprehensive instructions as to calls' timing, manner, etc. However, beyond that, actions taken to benefit a seller by a third party, without more, do not trigger TCPA liability for the seller.

20. The FCC held, sellers may be liable for non-compliant conduct by third parties marketing the seller's goods or services, if the seller is aware of "ongoing conduct encompassing numerous acts" by the third party, and the seller fails to terminate the third party and/or promotes or "celebrates" the third party's conduct. In that circumstance, the seller has the ability, through its authorization to the third party, to oversee the conduct, even if that supervisory power is unexercised. In such cases, liability is determined based on "general common law" agency-related principles, rather than the law of any state, though it is not limited to classical agency principles, but rather also includes apparent authority and ratification as bases for vicarious seller liability.

## ALLEGATIONS OF FACT

21. On or about the afternoon of November 12th, 2015, Plaintiff began being bombarded with the most egregious solicitation text messaging campaign from the Defendant utilizing SMS code **498-33**.

22. Due to similar solicitation calls, Plaintiff placed his cellular telephone number (682) 241-8688, on the national "Do-Not-Call" registry in May of 2014.

23. The first text message Plaintiff received stated, "Reply Ok for Hy-Vee automated marketing messages, consent not required to purchase. Up to 2 msgs/wk. Msg&Data rates may apply. Rply HELP for Help;STOP to Cancel."

24. Confused, Plaintiff simply replied, "Who is this?" This simple reply started a barrage of egregious unsolicited text messages from the Defendant and responses from Plaintiff. Plaintiff texted 'stop' approximately five (5) times, yet the sarcastic text messages continued. This blatant disregard of Plaintiffs request was deplorable, and intentional.

25. Plaintiff has never provided his cellular phone number to Defendant or given his prior express consent to be called, whether on his own or on behalf of any third party.

26. Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which a machine places calls, and when a consumer

answers the phone there is a noticeable pause prior to being connected to a live representative of Defendant.

27. This technology, upon information and belief, dials several numbers simultaneously and connects the call only to those who answer first.

28. Defendants telephone calls to Plaintiffs cellular telephone utilizing an "artificial or prerecorded voice" or placed by "an automatic telephone dialing system" for non-emergency purposes and in the absence of the Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

29. Under the TCPA and pursuant to the FCC's January 2008 and July 2015 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statue.

30. Plaintiff suffered harm and damages in the form of text message, data, and other charges to his cellular telephone plan.

## QUESTIONS OF LAW

31. Questions of law and fact include, but are not limited to, the following:

a. Whether Defendant made non-emergency calls to Plaintiff's cellular telephone using an automatic telephone dialing system or artificial or prerecorded voice;

b. Whether Defendants conduct was knowing and/or willful;

c. Whether Defendant is liable for damages and the amount of such damages.

## COUNT I

## VIOLATION OF THE ("TCPA"), 47 U.S.C. SECTION 227, ET SEQ.

. .

32. The Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

33. Without prior express consent, the Defendant contacted the Plaintiff at least seventeen (17) times by means of automatic telephone calls or, prerecorded messages at a cellular telephone or pager in violation of 47 U.S.C. section 227(b)(A)(iii).

34. The phone calls were made to Plaintiff without the number being provided to Defendant, and without the prior express consent of Plaintiff.

35. Defendant's equipment qualifies as a predictive dialer because it is equipment, combining software and hardware aspects, that has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

## PRAYER FOR RELIEF

a) As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages of up to $1,500.00 for each and every call-in violation of the statue, pursuant to 47 U.S.C. § 227(b)(3);

b) An award of all fees and costs incurred by Plaintiff;

c) All other cost the Court sees justifiable under the law.

Respectfully submitted,

Wayne Norman

3010 Finley Drive

Downers Grove, Illinois 60515

whnorman@hotmail.com